FIRST NATIONAL BANK OF CHICAGO *v.* ROBERT L. MAYNARD, JR., ET AL.
(AC 22754)

Dranginis, Landau and Shea, Js.

Argued September 23, 2002—officially released March 4, 2003

David F. Borrino, with whom, on the brief, was Adam L. Bendett, for the appellant (plaintiff).

Michael W. Sheehan, for the appellee (defendant G.C. Holdings, LLC).

Opinion

LANDAU, J. In this foreclosure action, the plaintiff, First National Bank of Chicago, appeals from the judgment rendered by the trial court approving a foreclosure by sale of the property owned by the defendants Robert L. Maynard, Jr., and Barbara J. Gladue.[1] On appeal, the plaintiff claims that the court improperly exercised its discretion when it (1) approved the sale of the property to an unregistered bidder, (2) approved a sale where the bid was only 50 percent of the property's value and (3) condoned the failure of the committee to reopen the auction. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff commenced this action to foreclose its mortgage on property located at 126 Tom Wheeler Road, North Stonington. On July 9, 2001, the court rendered judgment of foreclosure by sale, finding the debt to be $129,216 and the fair market value of the property to be $200,000. The court ordered bidders to deposit $20,000 with the committee, but excused the plaintiff from this require-

---

[1] Maynard and the other original defendants are not parties to this appeal. The appellee in this appeal is the purchaser of the property at issue, G.C. Holdings, LLC, which was made a party defendant pursuant to General Statutes § 52-107, and Practice Book §§ 9-18 and 9-22.

ment. The court ordered the foreclosure sale to take place at the premises on September 29, 2001, at noon.

On the date of the sale, six bidders registered and participated in the auction, which the committee began at noon.[2] Mark Tate opened the auction with a $25,000 bid, followed by a bid by Gary M. Whipple for $100,000. Because there were no further bids, the committee accepted Whipple's bid, closed the bidding and concluded the auction.

Shortly thereafter, while the committee was reading the bond for deed to Whipple and returning the deposit checks to the unsuccessful bidders, the plaintiff's representative, attorney Charles F. Basil, arrived. Basil requested that the committee open the bidding so that he could submit a bid on behalf of the plaintiff. Basil claimed that due to the poor directions that he acquired from the Internet, traffic, poorly marked road signs and a cellular phone with no service in the remote area, he was unable to locate the premises. The committee, however, refused Basil's request and issued the bond for deed to G.C. Holdings, LLC, at Whipple's request.[3]

On October 1, 2001, the plaintiff filed a motion to set aside the sale and to set a new sale date because the plaintiff was unable to attend the sale and because the successful bid was only 50 percent of the property's value. On October 9, 2001, G.C. Holdings, LLC, filed a motion to be made a party defendant, which the court subsequently granted. After a hearing, the court denied the plaintiff's motions and approved the sale to G.C. Holdings, LLC.[4] This appeal followed.

---

[2] The six registered bidders were Mark Tate, Frank Cafone, Shelly Shields, Stephen Pearson, Thomas Fortin and Gary M. Whipple.

[3] Whipple was the sole member of G.C. Holdings, LLC.

[4] On November 13, 2001, the plaintiff filed an amended motion to set aside the sale on additional grounds. The court, however, denied the motion. In addition, on December 31, 2001, the plaintiff filed a motion to reargue because the court did not address the additional grounds stated in the plaintiff's amended motion. After a brief hearing, the court affirmed its

We first note our standard of review. "[A] foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Hintlian*, 241 Conn. 269, 275, 696 A.2d 315 (1997); *Citicorp Mortgage, Inc.* v. *Burgos*, 227 Conn. 116, 120, 629 A.2d 410 (1993).

I

The plaintiff first claims that the court improperly approved the sale of the property to an unregistered bidder. It specifically argues that bidders were required to register with the committee and to provide a certified check in the amount of $20,000. The plaintiff further argues that Whipple was the party who submitted the requisite deposit amount and therefore was the registered bidder who was enabled to bid on the property. Consequently, the plaintiff contends that when the committee issued the bond for deed to G.C. Holdings, LLC, an unregistered bidder, this amounted to an irregularity. The plaintiff argues that because of this irregularity, the court abused its discretion when it approved the sale to G.C. Holdings, LLC, and improperly denied the plaintiff's motion to set aside the sale.

"[W]hen a court order respecting the conduct of a judicial sale is not complied with the court should scrutinize the transaction very carefully to assure itself that the sale has been conducted fairly and impartially and, if any irregularity has occurred, that *no interested party has been injured by it*. If any likelihood of injury is shown it would be an abuse of discretion for the trial

denial of the plaintiff's motion to set aside and approved the sale to G.C. Holdings, LLC.

court to approve the sale." (Emphasis added; internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Burgos*, supra, 227 Conn. 121. The court may set aside the sale, if equitable principles so demand, where an irregularity exists and an interested party has been injured as a result of the irregularity. Id. We consider the particular facts of this case to determine whether the court abused its discretion when it approved the sale of the property to G.C. Holdings, LLC, and denied the plaintiff's motion to set aside the sale.

First, the plaintiff correctly points out that an irregularity existed when the committee approved the sale to G.C. Holdings, LLC. On the day of the sale, Whipple deposited a $20,000 bank check in his name. Whipple was, therefore, a qualified bidder who could bid at the sale. Consequently, when the committee issued the bond for deed to G.C. Holdings, LLC, instead of to Whipple, this resulted in an irregularity because a limited liability company is a legal entity separate from its members.[5] See General Statutes § 34-124.

Although we do not condone the practice of failing to register in the name of the entity to whom the bond for deed is to be issued because it is indeed an irregularity, in order to recover, the plaintiff must also show "injury to [itself] resulting from the irregularity complained of." (Internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Burgos*, supra, 227 Conn. 121. The plaintiff maintains that it was injured because the committee failed to reopen the bidding so that the plaintiff could submit its bid on the property. The plaintiff, however, misses its mark. Although there was an irregularity, the plaintiff fails to show how it was injured by this irregularity. See *Raymond* v. *Gilman*, 111 Conn. 605, 612–15, 151 A. 248 (1930) (affirming court's refusal

---

[5] G.C. Holdings, LLC, is a limited liability company, and although Whipple is its sole member, he and G.C. Holdings, LLC, are not the same legal entity.

to set aside sale because irregularity did not cause injury); cf. *Citicorp Mortgage, Inc.* v. *Burgos*, supra, 122–23 (reversing court's refusal to set aside sale because irregularity complained of caused injury).

In the present case, following the order of the court, the committee began the sale at noon. The plaintiff concedes that Basil arrived late and that when he arrived, the committee was in the process of issuing the bond for deed. The committee's act of issuing the bond for deed to G.C. Holdings, LLC, instead of to Whipple, did not cause injury to the plaintiff; the plaintiff's injury was a result of Basil's tardiness and not a result of the irregular action of the committee's issuing a bond for deed to an entity other than the successful bidder. On the basis of our review of the facts, we conclude that there was no injury to the plaintiff arising out of its complaint and, therefore, the court did not abuse its discretion when it refused to set aside the sale.

## II

The plaintiff next argues that the court abused its discretion when it approved a sale that was based on an inadequate bid. Specifically, the plaintiff claims that the bid was only 50 percent of the property's fair market value because the property was appraised at $200,000 and the successful bid was for only $100,000. Alternatively, the plaintiff argues that the successful bidder paid only $100,000 for the property, plus approximately $24,000 in unpaid taxes and that this constituted only 62 percent of the property's fair market value of $200,000.[6] We do not agree.

---

[6] The plaintiff also contends that the court abused its discretion because it did not consider equitable factors when it approved the sale. The plaintiff points to several factors that the court considers when deciding whether to approve or disapprove a sale. Such factors cited by the plaintiff include "(1) whether the sale price essentially satisfies the plaintiff's debt . . . (2) whether the sale price is adequate in comparison with the appraised value of the premises . . . (3) whether the sale price is adequate in comparison with the existing marketing conditions; [and] (4) whether a subsequent sale could be expected to yield a greater purchase price . . . ." (Citations omit-

We first note that "the usual notion of fair market value is inconsistent with the notion of a foreclosure sale. [F]air market value is generally said to be the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal. . . . An auction sale, such as a foreclosure sale, is not designed to reach that result because there is no opportunity for negotiations, and the seller, namely, the committee appointed by the trial court to conduct the sale, *is* under compulsion to make a deal, in the sense that it is required to take the highest bid, subject only to the approval of the court." (Citations omitted; emphasis in original; internal quotation marks omitted.) *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 280, 630 A.2d 1010 (1993); see also *New Haven Savings Bank* v. *West Haven Sound Development*, 190 Conn. 60, 71, 459 A.2d 999 (1983). "It is generally recognized that the grounds which would warrant a court's refusal to approve a sale are fraud, misrepresentation, surprise or mistake." (Internal quotation marks omitted.) *Wilcox* v. *Willard Shopping Center Associates*, 23 Conn. App. 129, 133, 579 A.2d 130 (1990); *Jefferson* v. *Karpowicz*, 10 Conn. App. 198, 200,

---

ted.) Although the court has historically considered each of these factors in turn, the plaintiff views these factors individually as dispositive. We decline to review each factor individually because a court of equity has broad discretion, and a court of equity "may examine all relevant factors to ensure that complete justice is done." (Internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Hintlian*, supra, 241 Conn. 275; see also *Fidelity Trust Co.* v. *Irick*, 206 Conn. 484, 490, 538 A.2d 1027 (1988).

In addition, we decline to consider the ground raised by the plaintiff in support of its claim, specifically, that it was willing to bid $135,900, because representations by counsel are not considered evidence. See, e.g., *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 25–26, 783 A.2d 1157 (2001). Moreover, the plaintiff did not request further articulation of the trial court's decision pursuant to Practice Book § 66-5. "The duty to provide this court with a record adequate for review rests with the appellant." (Internal quotation marks omitted.) *New Haven Savings Bank* v. *Mongillo*, 67 Conn. App. 799, 801, 789 A.2d 547 (2002). In light of the inadequate record before us, we decline to review this claim.

522 A.2d 322 (1987). Furthermore, "[a] foreclosure by sale may result in bids not only less than the appraised value of the property, but even less than the foreclosing mortgagee's loan, allowable expenses and taxes. Because the trial court has control of the foreclosure proceedings, it can, in the exercise of its discretion, accept or reject a proposed sale." *Fidelity Trust Co.* v. *Irick*, 206 Conn. 484, 490, 538 A.2d 1027 (1988).

In the present case, the plaintiff relies on the preliminary appraisal completed by the court-appointed appraiser pursuant to General Statutes § 49-25.[7] This appraisal estimated the value of the property to be $200,000, pursuant to a drive-by inspection. "[T]he trial court is not bound to accept the appraised value . . . [but] it may [be used to] assist the trial court in the exercise of its discretion, in accepting or rejecting a proposed sale." (Citation omitted.) *Dime Savings Bank of New York* v. *Grisel*, 36 Conn. App. 313, 318, 650 A.2d 1246 (1994).

At the hearing on the plaintiff's motion to set aside the sale, the court found the value of the property to be $152,000.[8] The court based its finding on an appraisal

---

[7] General Statutes § 49-25 provides: "When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make the sale and fix a day therefor, and shall direct whether the property shall be sold as a whole or in parcels, and how the sale shall be made and advertised; but, in all cases in which such sale is ordered, the court shall appoint one disinterested appraiser who shall, under oath, appraise the property to be sold and make return of the appraisal to the clerk of the court. Upon motion of the owner of the equity of redemption, the court shall appoint a second appraiser in its decree. If the plaintiff is the purchaser at sale, or if the property is redeemed at any time prior to the approval of the sale, or if for any reason the sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and be taxed with the costs of the case. If, after judgment has been rendered, the amount found to be due and for which foreclosure is decreed, together with the interest and the costs, is paid to the plaintiff before the sale, all further proceedings in the suit shall be stayed."

[8] At this hearing, the court allowed G.C. Holdings, LLC, to admit into evidence the testimony of Pamela Gural, who had completed an internal inspection of the property on October 24, 2001. Although the plaintiff

that had been completed on October 24, 2001. This appraisal included an internal inspection of the house. The court was well within its broad discretion when it found the value of the property to be $152,000. See *Danbury Savings & Loan Assn., Inc.* v. *Hovi*, 20 Conn. App. 638, 641–42, 569 A.2d 1143 (1990). The court found the successful bid to be two-thirds of the property's value. Furthermore, the court found significant the fact that a representative from the second mortgage holder was a bidder at the sale and did not bid in excess of $100,000. The court balanced the equities and determined that equitable principles favored approving the sale. We conclude, on the basis of the record before us, that the court did not abuse its discretion when it approved the sale.

### III

Finally, the plaintiff claims that the court improperly exercised its discretion in approving the sale by condoning the refusal of the committee to allow a late bid. Specifically, the plaintiff argues that the committee failed to consider the circumstances that prevented its representative from attending the auction and that the court approved an inequitable sale by failing to consider the plaintiff's proposed bid. The plaintiff maintains that the committee should have reopened the bidding when the plaintiff's representative arrived because the bond for deed was not yet signed. The plaintiff relies on the principles of equity and fairness.

"The court is the vendor in a foreclosure by sale resulting from a judicial proceeding, and the committee of sale is the mere agent of the court. . . . The balancing of the equities and the determination of what is

---

objected to this testimony, and was overruled, it does not challenge this testimony or evidence on appeal. See, e.g., *Traggis* v. *Shawmut Bank Connecticut, N.A.*, 72 Conn. App. 251, 264, 805 A.2d 105, cert. denied, 262 Conn. 903, 810 A.2d 270 (2002).

required by equity in a particular case are matters of discretion for the trial court. . . . Our review of the court's factual determinations is limited to whether those facts are supported by the evidence, or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted.) *Dime Savings Bank of New York* v. *Grisel*, supra, 36 Conn. App. 320–21.

In this case, the court balanced the equities and determined that equity favored approval of the sale. The court found that the sale was advertised to commence at noon on the premises and that the plaintiff's representative, Basil, was not present when the committee conducted the sale. Furthermore, the proceedings had closed when Basil arrived, and the committee awarded the sale to Whipple.[9] The only party to benefit from a new sale would be the plaintiff, and it was the plaintiff who was at fault for not being on time and present on the date of the sale. A court typically will "not reject the sale under these circumstances without undermining the integrity of the foreclosure by sale concept." Id., 321. The court found that equity favored approval of the sale. We conclude, on the basis of the record before us, that the court took great care in balancing the equities and did not abuse its discretion in approving the sale to G.C. Holdings, LLC.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] While there was some dispute as to the time Basil arrived, the plaintiff does not dispute that Basil arrived late and that the proceedings had closed.