******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NATIONAL CITY REAL ESTATE SERVICES, LLC *v.*
JULIAN D. TUTTLE ET AL.
(AC 36324)

Beach, Prescott and Bishop, Js.

*Argued December 3, 2014—officially released February 3, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Tyma, J. [foreclosure judgment]; Hon. Richard
P. Gilardi, judge trial referee [motion for approval of
sale].)

*Thomas E. Minogue*, for the appellants (named defendant et al.).

*John J. Ribas*, with whom, on the brief, was *Jeffrey M. Knickerbocker*, for the appellee (substitute plaintiff).

*Donald F. Salomone*, self-represented, the appellee (successful bidder).

*Opinion*

PER CURIAM. At issue in this appeal is whether, following a judgment of foreclosure by sale rendered in favor of the substitute plaintiff, PNC Bank, N.A.,[1] with respect to property owned by the defendants Julian Tuttle and Janice Tuttle,[2] the trial court abused its discretion by approving a sale of the property in an amount substantially lower than its fair market value. Having carefully considered the facts and circumstances surrounding the court's approval of the sale, we conclude that the court did not abuse its discretion and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The defendants defaulted on a note that they had executed in October, 2001, in the principal amount of $108,660. The note was secured by a mortgage on real property owned by the defendants at 233-235 Monroe Turnpike in Monroe.

The present foreclosure action was commenced in December, 2009. On March 12, 2012, the court granted the plaintiff's motion for summary judgment as to liability and, on January 22, 2013, rendered judgment of foreclosure by sale. At that time, the court found that the fair market value of the subject property was $490,000, and that the debt owed to the plaintiff was $135,245.72. The court set a sale date of May 25, 2013, and appointed Attorney Kathleen M. Dunn to act as the committee overseeing the foreclosure sale. The defendants did not appeal from the judgment of foreclosure.

The foreclosure sale was conducted on May 25, 2013, at the property. It was raining heavily at the time of the sale. The defendants, who continued to occupy the premises, did not provided access to allow the sale to be conducted inside or for inspection of the interior by potential bidders.[3] Of the three bidders who had preregistered with the committee, only two appeared at the sale. The opening bid was $157,639.63. A total of forty-two bids were made. Donald F. Salomone placed the winning bid of $210,500, which was accepted by the committee.

On May 30, 2013, the committee filed a motion for acceptance of the committee report and for approval of the sale. The defendants filed an objection to the committee's motion on June 12, 2013. They argued that the closing bid was unfair and inadequate because it was $289,500 (42.9 percent) less than the fair market value of the property as determined by the court at the time of the foreclosure judgment, and because the low sale price unfairly deprived the defendants of substantial equity that they needed to satisfy subsequent encumbrancers and other creditors. They also argued that the low sale price provided an unwarranted windfall to Salomone. Subsequent encumbrancer JPMorgan Chase Bank, N.A. (JPMorgan); see footnote 2 of the

opinion; also filed an objection, noting that the final bid was less than 43 percent of the fair market value as determined by the court, and arguing that approval of the sale would be inequitable.

The plaintiff filed a memorandum of law in support of the committee's motion seeking approval of the sale. The plaintiff argued that this court has recognized only limited grounds upon which a trial court properly could refuse to approve a sale; see *First National Bank of Chicago* v. *Maynard*, 75 Conn. App. 355, 361, 815 A.2d 1244 ("generally recognized that the grounds [that] would warrant a court's refusal to approve a [foreclosure] sale are fraud, misrepresentation, surprise or mistake" [internal quotation marks omitted]), cert. denied, 263 Conn. 914, 821 A.2d 768 (2003); none of which were applicable to the present sale. The plaintiff further argued that in *LaSalle Bank, N.A.* v. *Randall*, 125 Conn. App. 31, 6 A.3d 175 (2010), this court upheld the approval of a foreclosure sale at which the winning bid was less than 40 percent of the fair market value as determined by the court at the time of the foreclosure judgment.

The successful bidder, Salomone, also filed a memorandum of law in support of approval of the sale. In addition to the arguments made by the plaintiff, Salomone noted that the most recent court-appointed appraisal of the property, conducted on May 18, 2013, in accordance with General Statutes § 49-25, listed the fair market value of the property at $360,000, substantially less than the $490,000 appraisal.

The court, *Hon. Richard P. Gilardi*, judge trial referee, heard oral argument on the committee's motion on July 15, 2013.[4] After listening to the defendants' arguments that the sale price was too low, and thus inequitable, the court asked the defendants' counsel, "what's to say if there's another sale that they're going to get [a higher bid]?" In response, counsel stated that "that's the chance that everybody's going to take," and then he returned to his argument that the final bid was well below fair market value. When the defendants' counsel was asked by the court to distinguish the present case from *LaSalle Bank, N.A.*, which was cited by the plaintiff, he erroneously suggested that the disparity between the sale price and the fair market value in the present case was greater than the disparity in that case. The plaintiff's counsel later corrected the defendants' counsel, however, explaining that in *LaSalle Bank, N.A.*, the court had approved a sale that had generated less than 40 percent of the foreclosed property's fair market value, which actually was a lower percentage than the 42.9 percent difference in the present case. The plaintiff's counsel also argued that the defendants had not challenged the manner in which the sale was conducted, that any further delay to hold another sale would only prejudice the plaintiff further, and that there was no

evidence that another sale would yield a better outcome for the defendants.

The court granted the committee's motion for approval of the sale without explanation on November 15, 2013. This appeal followed. On January 3, 2014, the defendants filed a motion for articulation asking the trial court to state the factual and legal bases for its decision approving the sale. The court issued an articulation on February 7, 2014. Ultimately, the court concluded as follows: "In the present case, the court balanced the equities and determined equity favored approval of the sale. . . . As was indicated, the defendants have submitted no factual or legal claims that the procedure of the foreclosure committee and the equitable process of the court was flawed. In summary, the [defendants] did not offer any substantive argument to preclude this court's approval of the committee recommendation." (Citation omitted.) The defendants did not seek review of the court's articulation or ask for further clarification of the court's ruling. See Practice Book §§ 66-5 and 66-7.

The defendants claim on appeal that the court abused its discretion by approving the foreclosure sale. On the basis of the record before us, we disagree.

"[T]he applicable standard of review applied to a court's approval of a committee sale is the abuse of discretion standard. . . . [A]n action of foreclosure is peculiarly equitable and . . . the court exercises discretion in ensuring that justice [is] done. . . . In approving the committee sale, [t]he court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to . . . the owners [of the foreclosed property]. . . . Most importantly, the court possesses the authority to refuse to confirm sales upon equitable grounds where [the sales are] found to be unfair or the price bid was inadequate." (Citation omitted; internal quotation marks omitted.) *Rockville Bank* v. *Victory Outreach Ministries, Inc.*, 125 Conn. App. 1, 9–10, 6 A.3d 177 (2010).

It is not unusual for a foreclosure sale to yield considerably less than the property's appraised fair market value. See *Fidelity Trust Co.* v. *Irick*, 206 Conn. 484, 490, 538 A.2d 1027 (1988). "[A] foreclosure by sale may result in bids not only less than the appraised value of the property, but even less than the foreclosing mortgagee's loan, allowable expenses and taxes. Because the trial court has control of the foreclosure proceedings, it can, in the exercise of its discretion, accept or reject a proposed sale." Id. Further, as recognized by our Supreme Court, "[t]he usual notion of fair market value is inconsistent with the notion of a foreclosure sale. [F]air market value is generally said to be the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal. . . . An auction sale, such

as a foreclosure sale, is not designed to reach that result because there is no opportunity for negotiations, and the seller, namely, the committee appointed by the trial court to conduct the sale, *is* under compulsion to make a deal, in the sense that it is required to take the highest bid, subject only to the approval of the court." (Citations omitted; emphasis in original; internal quotation marks omitted.) *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 280, 630 A.2d 1010 (1993). No appellate case has established whether there is a certain percentage of fair market value below which a sale would trigger a trial court's obligation to reject a foreclosure sale on the ground that the price was inadequate or unfair as a matter of law. Nevertheless, this court has affirmed a court's approval of a foreclosure sale yielding as little as 40 percent of the property's fair market value. See *LaSalle Bank, N.A.* v. *Randall*, supra, 125 Conn. App. 31.

Turning to the present matter, although it is undisputed that the price obtained at the foreclosure sale was substantially less than the fair market value determined by the court at the time of the foreclosure judgment, the defendants presented no claim to the court that the low sale price was the result of any irregularities in the sale process or in "the equitable process of the court." The defendants' claim, rather, was solely that the sale price was inadequate per se. At the hearing on the motion for approval of the sale, however, the defendants did not produce a witness or proffer any other evidence from which the court could have found that the sale price was fundamentally unfair under the circumstances presented or that a new sale likely would have yielded a better outcome. When the court directly asked the defendants' counsel whether the defendants had any indication that they would get better offers at a new sale, counsel answered only that there was a chance. Such speculation alone cannot provide a legal basis on which to deny approval of a foreclosure sale that was conducted without any irregularities.

Moreover, there were also a number of factors before the court that support the court's approval of the sale. First, the foreclosure action had been pending for a number of years, and further delay would have prejudiced the plaintiff. Also, the court-ordered appraisal of the property that was conducted only a few weeks prior to the sale found that the fair market value was $360,000, cutting nearly in half the difference between the sale price and the fair market value as determined at the time of the foreclosure judgment. Finally, it could fairly be argued that the defendants' own actions may have contributed to a lower sale price. The defendants denied the committee and the bidders access to the interior of the property, so that the auction had to be conducted in the rain, and the potential bidders, who would be required to take the property "as is," were unable to conduct an interior inspection.

The court indicated in its articulation of its decision to approve the sale that it had "balanced the equities and determined equity favored approval of the sale." The court did not further discuss what factors it had considered or the weight it attached to any particular factor in balancing the equities in the present case, nor was it asked to do so by the parties in a motion for further articulation. "The general rule that a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty. . . . It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly. . . . Rather, we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly, including considering the applicable legal principles." (Citations omitted; internal quotation marks omitted." *Johnson* v. *de Toledo*, 61 Conn. App. 156, 161–62, 763 A.2d 28 (2000), appeal dismissed, 258 Conn. 732, 785 A.2d 192 (2001). On the basis of our review of the record provided, we presume that the court properly balanced the equities and determined that equity favored approving the sale. The defendants have, therefore, failed to persuade us that the court abused its discretion in making that determination.

The judgment is affirmed.

[1] The court granted a motion to substitute PNC Bank, N.A., for the original plaintiff, National City Real Estate Services, LLC. We therefore refer in this opinion to PNC Bank, N.A., as the plaintiff.

[2] The complaint named JPMorgan Chase Bank, N.A. (JPMorgan), as an additional defendant by virtue of a second mortgage that it held on the subject property that was subsequent in right to the plaintiff's mortgage. Because JPMorgan has not participated in this appeal, we refer to the Tuttles collectively as the defendants in this opinion.

[3] Although not expressly found by the court, these facts are contained in the committee's report, which was accepted by the court and not challenged on appeal.

[4] Counsel for JPMorgan did not appear at the hearing.