******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HOUSING DEVELOPMENT FUND, INC. *v.* BURKE
REAL ESTATE MANAGEMENT, LLC, ET AL.
(AC 36198)

DiPentima, C. J., and Prescott and Dupont, Js.

*Argued November 17, 2014—officially released February 17, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Mintz, J.)

*Benjamin Gershberg*, for the appellant (defendant
JRS Investments, LLC).

*Richard Lewis*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant JRS Investments, LLC (JRS), a junior lienholder,[1] appeals from the judgment of the trial court approving the foreclosure by sale of a six unit apartment building. On appeal, JRS claims that (1) the court abused its discretion by approving the sale where there had not been an inspection of the interior of the individual units, and (2) the court improperly failed to cite in the tenants of the individual apartments as necessary parties. We are not persuaded by these claims and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In a complaint dated April 19, 2010, the plaintiff, Housing Development Fund, Inc., commenced a foreclosure action against the named defendant, Burke Real Estate Management, LLC (Burke, LLC), and the defendants Pete A. Burke and Karen M. Burke (Burkes). Burke, LLC, had executed a note in the amount of $460,000 with interest in favor of the plaintiff. This note was secured by a mortgage on the property, which was located at 7 Milton Street in Stamford. Burke, LLC, and the Burkes, individually, executed and delivered a guaranty in which they jointly, severally and unconditionally guaranteed payment of the note. Burke, LLC, defaulted on the note as a result of nonpayment and, as of April 30, 2010, owed the plaintiff approximately $444,831.39. In the second count of the complaint, the plaintiff sought to enforce the guaranty of payment against the Burkes, individually, for the full amount of any deficiency judgment following the foreclosure of its mortgage.[2]

Burke, LLC, had executed two subsequent mortgages in favor of JRS in the amounts of $170,000 and $88,888. On June 15, 2010, the court rendered a default judgment against JRS for its failure to plead.

On January 14, 2011, the plaintiff moved for a judgment of strict foreclosure. Approximately three months later, it moved for summary judgment as to liability. The court granted the plaintiff's motion for summary judgment and, on November 21, 2011, rendered a judgment of strict foreclosure.[3] On July 16, 2012, Burke, LLC, moved to open the judgment of strict foreclosure and requested the court to enter a judgment of foreclosure by sale. The court granted this motion on September 19, 2012. The record discloses that that were several subsequent entries of judgment, and that the final judgment of foreclosure by sale was rendered on May 13, 2013.

On August 14, 2013, the court received the committee report. That report stated that the fair market value of the property was $550,000 and that at the foreclosure sale on August 10, 2013, three bidders had placed forty bids, with a winning bid of $501,500. The committee

moved the court to approve the sale, accept its report and allow reasonable fees to the committee and the appraiser.

JRS objected to the committee's motion to approve the sale. It argued that prospective bidders lacked access to the interior apartments on the date of the foreclosure sale. Approximately one month later, JRS moved, pursuant to General Statutes §§ 52-107 and 52-108 and Practice Book § 9-22, to cite in the tenants of the property as necessary parties. On September 23, 2013, the court denied the motion to cite in tenants and, overruling the objection to the motion to approve the sale, approved the sale. This appeal followed.

Before addressing the specific claims raised by JRS on appeal, we set forth the following relevant legal principles. "A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Rockville Bank* v. *Victory Outreach Ministries, Inc.*, 125 Conn. App. 1, 6, 6 A.3d 177 (2010); see also *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 760–61, 966 A.2d 239 (2009).

"The court is the vendor in a foreclosure by sale resulting from a judicial proceeding, and the committee . . . is the mere agent of the court. . . . The balancing of the equities and the determination of what is required by equity in a particular case are matters of discretion for the trial court. . . . Our review of the court's factual determinations is limited to whether those facts are supported by the evidence, or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *First National Bank of Chicago* v. *Maynard*, 75 Conn. App. 355, 363–64, 815 A.2d 1244, cert. denied, 263 Conn. 914, 821 A.2d 768 (2003).

"In approving the committee sale, [t]he court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owners." (Internal quotation marks omitted.) *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, supra, 112 Conn. App. 763. "Most importantly, the court possesses the authority to refuse to confirm sales upon equitable grounds where [the sales are] found to be unfair or the price bid was inadequate." (Internal quotation marks omitted.) *Rockville Bank* v. *Victory Outreach Ministries, Inc.*, supra, 125 Conn. App. 10; see also *First National Bank*

*of Chicago* v. *Maynard*, supra, 75 Conn. App. 361 ("[i]t is generally recognized that the grounds which would warrant a court's refusal to approve a sale are fraud, misrepresentation, surprise or mistake" [internal quotation marks omitted]). Guided by these principles, we address each of JRS's appellate claims in turn.

I

JRS first claims that the court improperly approved the sale in light of the committee's failure to obtain access to the interior of the individual units at the property, contrary to the uniform foreclosure standing orders. The plaintiff counters that neither our case law nor the uniform foreclosure standing orders, read in their entirety, support this claim. It further contends that JRS presented no evidence that such an inspection would have resulted in a higher sale price of the property. We agree with the plaintiff.

The following additional facts are necessary for our discussion. At the hearing on the motion to approve the sale, the committee indicated that the winning bid of $501,500 constituted approximately 91 percent of the fair market value of $550,000. In objecting, JRS argued that without an inspection of the units' interior, the sale price was lower than it should have been. The court inquired as to why the committee did not have access to allow inspections.[4] The committee responded: "Tenants were in there and we were told by Mr. Burke that they would not be allowing—there was a language difficulty. Most of them that I saw spoke Spanish. I do not speak Spanish and when we had the inspection with the appraiser, which you ordered an interior, I was there and we did view of couple of the units and the people that I saw were Spanish speaking. Mr. Burke did inform us that he couldn't get access to the other ones. And on the day of the sale, I didn't knock on every door, but I did knock on the rear door of one of the apartments where we gained access and there was no answer. I did give bidders the opportunity to knock on some doors if they felt it was appropriate for them to do so."

The court also asked if JRS had any proof to support its contention that had there been an interior inspection of the units, a higher sale price would have resulted. After a second request by the court, JRS stated that it did not have a witness to testify. The court also noted that JRS did not make a bid at the sale. After two additional invitations from the court to present evidence to support its claim, counsel for JRS acknowledged that no such witness was present at the hearing. The court then overruled its objection and approved the sale.

We begin our analysis by examining the relevant language from the uniform foreclosure standing orders. Paragraph 8 of Form JD-CV-79, entitled Foreclosure by Sale Standing Orders, provides: "The inspection of the

premises must be from 10:00 a.m. to 12:00 noon on the date of the sale." JRS interprets this to require an inspection of the interior of the six apartments so that potential bidders would have been able to evaluate the condition of the property, resulting in a higher sale price. This reasoning, however, ignores Form JD-CV-81, which, under the heading "Access to Premises," states: "Under no circumstances should the committee force entry into the property against the will of the party in possession. If the Debtor is not living at the property, the committee should try to obtain keys to enable the committee to inspect the property and show the property to prospective purchasers prior to the auction." Thus, it is clear that committee was not able to require that the tenants allow an inspection by the bidders at the foreclosure sale.

Our reasoning is buttressed by our Supreme Court's decision in *Second National Bank of New Haven* v. *Burtchell*, 166 Conn. 388, 349 A.2d 831 (1974). In that case, the plaintiff successfully foreclosed the property of the defendants and the court accepted the committee's report and approved the sale. Id., 389–90. On appeal, the defendants argued that the committee had obstructed an inspection of the property. Id., 392. The trial court found "(1) that the defendants did not cooperate in voluntarily permitting prospective purchasers to go into the house and examine it and (2) that the committee respected this right of privacy and announced this to persons attending the sale." Id. Our Supreme Court determined that the court's factual finding that the committee had "respected the defendants' right of privacy and had no authority to order the defendants to permit prospective purchasers to enter their home for the purpose of inspecting it" was not clearly erroneous. Id., 392–93.

We conclude that the court in the present case did not abuse its discretion in granting the committee's motion to approve the sale. Although the standing order cited by JRS provides for the time of an inspection on the date of the sale, it does not set forth the scope of this inspection. Moreover, Form JD-CV-81 specifically instructs that the committee should not force entry into a property contrary to the will of the party in possession. Further, in accordance with *Burtchell*, the court properly concluded that the committee lacked the authority to force the tenants to permit an inspection in the apartments. Finally, JRS failed to present any evidence in support of its bald assertion that such an inspection would have resulted in a higher sale price. For these reasons, we conclude that trial court did not abuse its discretion.

## II

JRS next claims that the court improperly denied its motion to cite in the tenants of the individual units as parties. Specifically, it argues that the tenants were

necessary parties, and, therefore, the court should have added them as parties pursuant to § 52-107. We disagree.

The following additional facts are necessary for our discussion. In a motion dated September 20, 2013, JRS moved to add the tenants of the property as party defendants pursuant to General Statutes §§ 52-107 and 52-108, and Practice Book § 9-22.[5] Specifically, JRS argued that the court should cite in the tenants under either the "mandatory intervention" provision of § 52-107 or the permissive provision of that statute. The court denied JRS' motion on September 23, 2013.[6]

"The decision whether to grant a motion for the addition of a party to pending legal proceedings rests generally in the sound discretion of the trial court. . . . Accordingly, [o]ur review . . . is confined to determining whether the trial court abused its discretion. . . . Judicial discretion [however] . . . is always legal discretion, exercised according to the recognized principles of equity. . . . While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done. . . . In essence, the trial judge's discretion should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Citations omitted; internal quotation marks omitted.) *In re Devon B.*, 264 Conn. 572, 580–81, 825 A.2d 127 (2003); see *Lettieri* v. *American Savings Bank*, 182 Conn. 1, 13, 437 A.2d 822 (1980) (decision to grant motion for addition of party to pending legal proceedings rests generally in sound discretion of trial court); *1525 Highland Associates, LLC* v. *Fohl*, 62 Conn. App. 612, 619, 772 A.2d 1128 (same), cert. denied, 256 Conn. 919, 774 A.2d 137 (2001).

General Statutes § 52-102 provides: "Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy." Pursuant to this statute, the trial court is required to grant a motion to cite in a necessary party. *Donner* v. *Kearse*, 234 Conn. 660, 669, 662 A.2d 1269 (1995).

Our Supreme Court has defined necessary parties as "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in

it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. . . . In short, a party is necessary if its presence is absolutely required in order to assure a fair and equitable trial." (Citation omitted; internal quotation marks omitted.) *Biro* v. *Hill*, 214 Conn. 1, 5–6, 570 A.2d 182 (1990); see also *Sturman* v. *Socha*, 191 Conn. 1, 6–7, 463 A.2d 527 (1983). The question, therefore, is whether the trial court properly determined that it could do complete and final justice without the tenants being joined as parties.

In *Tappin* v. *Homecoming Financial Network, Inc.*, 265 Conn. 741, 753, 830 A.2d 711 (2003), our Supreme Court observed that the title to property and possession of that property are separate questions and that title to property may be obtained via a foreclosure action without acquiring the right to possession. A foreclosing mortgagee has two options to obtain possession of the property from a tenant: the mortgagee may name the tenant as a party in the foreclosure action and obtain a judgment of ejectment; or, the mortgagee separately may pursue a summary process action after obtaining title. *Federal Home Loan Mortgage Corp.* v. *Van Sickle*, 52 Conn. App. 37, 42–43, 726 A.2d 600 (1999); see also *Tappin* v. *Homecomings Financial Network, Inc.*, supra, 759.

The tenants are not necessary parties to this foreclosure action. The plaintiff did not name the tenants as defendants. As a result, the tenants were not subject to a judgment of ejectment. The only issues in the foreclosure action pertained to the note, the default by Burke, LLC, and the determination of legal title to the property. The matter of possession of the apartments was not before the court. Accordingly, the appearance of the tenants was not needed to assure a fair and equitable trial, and the court could render a complete and final judgment without the tenant's participation. We conclude, therefore, that the court did not abuse its discretion in denying JRS' motion to cite in.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The other defendants named in the complaint are Burke Real Estate Management, LLC, the mortgagor, Pete A. Burke and Karen M. Burke, guarantors of the $460,000 note, and the city of Stamford, the Stamford Water Pollution Control Authority and the Aquarion Water Company of Connecticut, entities that had subordinate encumbrances of record on the property. None of these defendants is involved in this appeal.

[2] On January 13, 2011, the plaintiff withdrew the action against the Burkes.

[3] This judgment of strict foreclosure was rendered as to the $460,000 note and mortgage made between Burke, LLC, and guaranteed by the Burkes, individually.

[4] In the foreclosure by sale fact sheet and the posting on the Judicial Branch website, the committee had indicated that the property was being sold "as is," that the committee made no warranties concerning the condition of the property and that no adjustments to the sale price would be made after the sale date.

[5] General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

General Statutes § 52-108 provides: "An action shall not be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the action, as the court deems the interests of justice require."

Practice Book § 9-22 provides: "Any motion to cite in or admit new parties must comply with Section 11-1 and state briefly the grounds upon which it is made."

[6] At the September 23, 2013 hearing, the court stated: "The court is going to find that the motion to cite was not before the court but even if it was based on the argument that I've heard, I would deny it because they—if they wanted to be in it, [the tenants] could be in it but then they would [be] subject to an ejectment [action]. In fact, the motion to cite would be an undue burden on the tenants to subject them to the writ of ejectment from this court, which would be a lot more summary than the eviction process in Housing Court where they have all the rights of tenants.

"So, the court would deny the motion to cite in anyway because if [the tenants] wanted to be in its mandatory. But the fact that a subsequent lienholder would try to burden tenants with the expense of perhaps hiring attorneys here, perhaps being subjected to a writ of ejectment, which would be a lot more summary than the summary of process procedure [and] which would be an undue burden on them and as the court of equity, the court would not allow that.

"The court will allow [the tenants] not be subject to the writ of ejectment and force the successful bidders who knowingly and voluntarily have noted that they are going to have to go to Housing Court to evict [the tenants] if they want to, which could take a lot longer than a writ of ejectment here. So, the court would not do that."

————————————————————