**WASHINGTON ELECTRIC
COOPERATIVE, INC.,
Plaintiff,**

**Village of Morrisville, Appellant,**

v.

**PATERSON, WALKE & PRATT, P.C.;
Paterson, Gibson, Noble and Goodrich;
Charles E. Gibson, Jr.; Austin B. Noble;
Julian R. Goodrich; Gordon J. Booth;
Frederick Ladue; Robert Toombs, Defendants,**

**Massachusetts Municipal Wholesale
Electric Company, Defendant–
Appellee.**

No. 590, Docket 92–7807.

United States Court of Appeals,
Second Circuit.

Argued Nov. 23, 1992.

Decided Feb. 9, 1993.

Robert A. Mello, South Burlington, VT (Leslie C. Pratt, of counsel), for appellant.

Gerald J. Caruso, Boston, MA (Nicholas J. Scobbo, Jr., Laurie Ellen Weisman, Ferriter, Scobbo, Sikora, Singal, Caruso & Rodophele, P.C., Boston, MA, Stephen S. Ankuda, Parker & Ankuda, P.C., Springfield, VT, of counsel), for appellee.

Before: PIERCE, MINER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

The Massachusetts Municipal Wholesale Electric Company ("MMWEC"), a public corporation and political subdivision of the Commonwealth of Massachusetts, plans and finances the acquisition of bulk power supplies, consisting of ownership interests in electric power facilities. MMWEC executes contracts—so-called Power Sales Agreements ("PSAs")—with giant power consumers, such as utilities, electric cooperatives, and municipalities, who agree to purchase electricity from MMWEC. MMWEC typically issues bonds to finance its acquisition of electric generating facilities, and the money paid to MMWEC under the PSAs is used to pay the bonds.

MMWEC bought a six-percent interest in a nuclear power plant being constructed in Seabrook, New Hampshire. MMWEC designated this as "Project No. 6" and, in 1979, executed PSAs for the Project with several Vermont villages, including Stowe and Morrisville, and with two Vermont electric cooperatives. MMWEC later determined that Stowe and another project participant did not satisfy the financial criteria for participation in Project No. 6, and, therefore, made them withdraw.

MMWEC offered the newly available shares in Project No. 6 to other project participants. Still eager to share in the Project, Stowe persuaded Morrisville to

purchase more power from MMWEC than it needed so that it could resell the excess to Stowe. Accordingly, in May 1981, Morrisville executed an "Agreement for Additional Participant's Share of Project Capability" with MMWEC, increasing its share of the Project by an additional 2.901 megawatts. Morrisville then made a contract with Stowe, assigning to Stowe "2.722 megawatts of capacity and related energy from [Morrisville's] entitlement in MMWEC's Project No. 6."

In 1986, Morrisville began making payments to MMWEC under its PSA. Stowe paid Morrisville for its pro-rated share of power, and Morrisville forwarded these payments to MMWEC as part of its total payments to MMWEC. This tidy arrangement fell apart in 1988, when the Vermont Supreme Court declared the PSAs executed by the Vermont villages and electric cooperatives to be void ab initio. *See Vermont Dep't of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co.*, 151 Vt. 73, 558 A.2d 215 (1988), *cert. denied*, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989); *see also Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92 (2d Cir.1990) (further factual background). By then, Morrisville had already paid MMWEC almost $3 million, of which $1.8 million were on Stowe's behalf and $1.2 million were payments from Morrisville on its own account.

Shortly after the Vermont Supreme Court's decision, one of the other Vermont participants sued MMWEC in Vermont state court for restitution of monies paid under its PSA. MMWEC removed the case to the District Court for the District of Vermont (Franklin S. Billings, *Judge*), and Stowe later intervened as a party plaintiff, seeking restitution of the $1.8 million that Morrisville had paid MMWEC for the benefit of Stowe.

Fearful that it might be whipsawed between Stowe and Morrisville, MMWEC filed a counterclaim for interpleader against Stowe, requesting (1) that Morrisville be made a party defendant to its interpleader claim, and (2) that Stowe and Morrisville be required to resolve all claims

they had against MMWEC. Five days later, Morrisville sued Stowe and MMWEC in Vermont State Court seeking (1) restitution of the $1.2 million it paid MMWEC for its share of Project No. 6 power capability, and (2) a declaration of the rights and obligations between itself, Stowe, and MMWEC.

Back in federal court, Morrisville moved to dismiss MMWEC's interpleader counterclaim; and MMWEC renewed its request for interpleader and added a request for an injunction to abort Morrisville's state court action. Judge Billings referred the motions to Magistrate Judge Jerome J. Niedermeier, who issued a Report and Recommendation ("R & R") urging the district court to order interpleader and to enjoin Morrisville from further prosecuting its state court action. Judge Billings adopted the R & R without modification. Morrisville now appeals.

## DISCUSSION

Under Rule 22, interpleader is proper if the party requesting it "is or may be exposed to double or multiple liability." Fed. R.Civ.P. 22(1). Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund. *See generally Texas v. Florida*, 306 U.S. 398, 406–08, 59 S.Ct. 563, 567–68, 83 L.Ed. 817 (1939); 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* §§ 1702, 1704, at 493–97, 500–03 (2d ed. 1986) [hereinafter Wright & Miller]. Accordingly, what triggers interpleader is "a real and reasonable fear of double liability or vexatious, conflicting claims...." *Indianapolis Colts v. Mayor of Baltimore*, 741 F.2d 954, 957 (7th Cir.1984) (collecting citations), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985).

■ As to the $1.8 million Stowe claims to have paid to MMWEC through Morrisville, MMWEC has a legitimate fear of having to pay the same claim twice. Stowe has already asserted its rights to this money. But the $1.8 million were actually paid to MMWEC, not by Stowe, but by Morris-

**680**

ville. Thus, Morrisville might also assert a claim for the $1.8 million. Another possibility is that Stowe might assert a claim against Morrisville for the $1.8 million, with Morrisville in turn suing MMWEC for indemnification. Thus, we agree with the district court that MMWEC's fear of multiple claims to the $1.8 million warranted interpleader. *See New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir.1983); *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 953–54 (2d Cir.1953); 7 Wright & Miller, *supra*, § 1704, at 502–03.

■ Although the district court identified potentially competing claims only as to the $1.8 million, it ordered interpleader of the entire $3 million Morrisville paid to MMWEC. This was error. In contrast to the $1.8 million Stowe is claiming in federal court, we see no possibility of conflicting claims as to the other $1.2 million for which Morrisville is suing in state court. Stowe has not even a colorable claim to the $1.2 million Morrisville paid to MMWEC for its own share of the generating capability of Project No. 6. Thus, interpleader for the $1.2 million was inappropriate. *See, e.g., Indianapolis Colts*, 741 F.2d at 958 (interpleader improper where stakeholder "cannot assert a reasonable fear of multiple liability or vexatious, conflicting claims"); *Industrial Bank of Wash. v. Techmatics Technologies, Inc.*, 763 F.Supp. 629, 634 (D.D.C.1991) ("To satisfy the adversity requirement for an interpleader action, the interpleader claims must be adverse to the fund and adverse to each other."), *aff'd*, 955 F.2d 764 (D.C.Cir.1992); 3A James W. Moore, Jo D. Lucas & George J. Grotheer, Jr., *Moore's Federal Practice* ¶ 22.08[1], at 22–50 to 22–51 (1991) ("if there is no risk of double liability or vexation, interpleader relief is not warranted").

MMWEC recognizes that there are no potentially conflicting claims to the $1.2 million Morrisville seeks in state court. It intimates, nevertheless, that concerns of judicial economy support consolidation of all actions against MMWEC in one forum. However, "interests of party convenience and judicial economy that would be served by trial of all claims in a single proceeding

'cannot compel the otherwise inappropriate joinder of claims in interpleader.'" *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 509 (9th Cir.1978) (quoting *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1142 (8th Cir.1976)); *see also Lafayette Corp. v. Bank of Boston Int'l S.*, 723 F.Supp. 1461, 1466 (S.D.Fla.1989).

Similarly, "any injunction that is issued only can extend to litigation involving the fund that is the subject matter of the interpleader." 7 Wright & Miller, *supra*, § 1717, at 619–20; *see also State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 534, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967). Because there was no suggestion that the $1.2 million for which Morrisville was suing in state court could be subject to conflicting claims or multiple litigation, interpleader of the $1.2 million was error. So was that provision of the district court's injunction prohibiting Morrisville from prosecuting its claim in state court.

### CONCLUSION

In sum, we affirm the district court's order to the extent it relates to the $1.8 million Stowe is claiming in the district court. We reverse that portion of the order requiring Morrisville to interplead its $1.2 million claim against MMWEC and enjoining Morrisville from prosecuting that claim in state court.