## VINCENT METRO, LLC *v.* YAH REALTY, LLC, ET AL.
### (SC 18486)

Rogers, C. J., and Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

490

Argued April 28—officially released July 20, 2010

*Peter E. Ricciardi,* with whom was *Albert J. Oneto IV,* for the appellant (plaintiff).

*Kenneth A. Votre,* with whom, on the brief, was *Michele D. Sensale,* for the appellees (defendants).

*Opinion*

KATZ, J. The plaintiff, Vincent Metro, LLC, appeals[1] from the judgment of the trial court, dismissing as moot its interpleader action in which it sought: (1) an order determining the rights of the defendants, YAH Realty, LLC (YAH Realty), John Fitzpatrick and Rose Fitzpatrick, to a deposit held by the plaintiff in its capacity as a real estate broker; (2) an order discharging the plaintiff from any obligation to the defendants; and (3) reasonable attorney's fees and costs. The dispositive issue in this appeal is whether the trial court, *A. Robinson, J.,* properly concluded that the interpleader action had been rendered moot by a stipulation among the defendants that the contested funds should be paid to YAH Realty.[2] We conclude that the trial court improperly determined that the plaintiff's action was moot because there was practical relief that could be afforded

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The plaintiff also claims that, because there was undisputed evidence entitling it to judgment in its favor as a matter of law, the trial court improperly declined to grant the plaintiff's motion for summary judgment on its interpleader action. Because we conclude, for the reasons set forth hereinafter in this opinion, that the trial court improperly concluded that the plaintiff's interpleader action was moot, the case must be remanded to the trial court; see *Hasychak* v. *Zoning Board of Appeals,* 296 Conn. 434, 449, 994 A.2d 1270 (2010); *In re Allison G.,* 276 Conn. 146, 167, 883 A.2d 1226 (2005); at which time the plaintiff is free to renew its motion for summary judgment, as well as its claims for attorney's fees and costs.

to the plaintiff. Accordingly, we reverse the judgment of the trial court.

The record reveals the following facts, as found by the trial court or otherwise undisputed, and procedural history. In July, 2005, the plaintiff entered into an agreement with YAH Realty according to which the plaintiff would act as a listing agent for a property owned by YAH Realty and would receive a commission if the property was sold as a result of the plaintiff's efforts. The plaintiff procured John Fitzpatrick as a buyer,[3] and thereafter YAH Realty and John Fitzpatrick entered into a purchase and sale agreement on that property. In accordance with the agreement, Rose Fitzpatrick provided $20,000 as the deposit on the property, which the plaintiff thereafter deposited into its real estate trust account pursuant to General Statutes § 20-324k (a). YAH Realty and John Fitzpatrick were unable to complete the transaction and, in September, 2006, they officially terminated the proposed sale. Initially, YAH Realty, John Fitzpatrick and Rose Fitzpatrick each made conflicting requests to the plaintiff for the return of the deposit.[4]

The plaintiff subsequently commenced the underlying interpleader action, pursuant to General Statutes § 52-484,[5] seeking: (1) an order determining the rights

[3] We note that although the defendants' statement of claim filed in June, 2007, identified John Fitzpatrick as the sole potential buyer of the property, a subsequent statement of claim filed in March, 2008, identified the potential buyers procured by the plaintiff as both John Fitzpatrick and Rose Fitzpatrick. This inconsistency is not relevant to our resolution of the issues on appeal.

[4] In their appellate brief, the defendants assert that they did not make conflicting claims for the deposit. We note, however, that the "statements of claim" filed by the defendants did in fact state conflicting claims to the deposit—John Fitzpatrick and Rose Fitzpatrick both claimed that the deposit belonged to John Fitzpatrick, while YAH Realty claimed that it was entitled to the funds.

[5] General Statutes § 52-484 provides: "Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the

of the defendants to the $20,000 deposit; (2) an order discharging the plaintiff from any obligation to the defendants arising out of their claims to those funds; and (3) reasonable attorney's fees and costs. The trial court, *Licari, J.*, entered an interlocutory judgment of interpleader, and the plaintiff deposited the contested funds with the clerk of the court on December 29, 2006.

Sometime between January and March, 2007, the defendants reached an agreement that the funds should be returned to YAH Realty, and on March 2, 2007, they filed a motion for an order to release the funds to YAH Realty. Judge Licari denied the motion without prejudice. The defendants then filed a joint answer, in which they asserted five counterclaims against the plaintiff relating to its allegedly wrongful conduct in failing to return the deposit. The defendants also filed separate statements of claim, in which they again asserted contradictory claims about the disbursement of the funds. The plaintiff subsequently moved for summary judgment on both its interpleader action and the defendants' counterclaims.[6] The defendants filed an objection to the plaintiff's motion and a cross motion for summary judgment on the plaintiff's interpleader action. Along with that motion, the defendants filed a stipulation stating that all three defendants had agreed that an order for release of the funds should be entered,

same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case, may tax costs at its discretion and, under the rules applicable to an action of interpleader, may allow to one or more of the parties a reasonable sum or sums for counsel fees and disbursements, payable out of such fund or property; but no such allowance shall be made unless it has been claimed by the party in his complaint or answer."

[6] The trial court's decision dismissing the plaintiff's interpleader action did not dispose of the defendants' counterclaims, and the specific nature of those pending claims are not relevant to the disposition of this appeal.

releasing all funds contained in escrow to YAH Realty.[7] Although the stipulation was signed by the defendants' attorney, it was not signed by any of the defendants.

Following argument on the merits of the motions for summary judgment, the trial court, *A. Robinson, J.,* issued a memorandum of decision declining to rule on those motions, on the ground that it had determined, sua sponte, that the plaintiff's interpleader action should be dismissed as moot. The court concluded that, although the action had been proper at its inception because the defendants initially had made conflicting claims to the funds, when the defendants reached an agreement as to the disbursement of the funds, the action became moot. Specifically, the court reasoned: "The defendants' stipulation concedes that the funds should be returned to [YAH Realty]. Therefore, there are no disputed facts as to where the funds should go, and the court lacks subject matter jurisdiction to entertain the motions for summary judgment concerning the interpleader action." The court further explained: "The task of the court in an interpleader action is to determine which of the adverse and competing claims to a particular fund is entitled to the fund. As a result of the defendants' agreement that the funds be released to [YAH Realty] there are no longer issues in dispute regarding claims to the escrow funds. . . . The court can no longer grant any practical relief. The issue is moot." This appeal followed.

On appeal, the plaintiff claims that the trial court improperly dismissed its interpleader action as moot because the defendants' stipulation did not conclusively

---

[7] The stipulation provided in full: "The [d]efendants, YAH Realty, John Fitzpatrick, and Rose Fitzpatrick, in the above titled action hereby agree and so stipulate that an order of release of the funds in the amount of $20,000 be entered, releasing all funds contained in escrow by the [p]laintiff to YAH Realty. All [d]efendants in this action agree that YAH Realty should be the recipient of said funds."

resolve the issues of whether the plaintiff should be discharged of any liability to the defendants arising out of their conflicting claims to the funds, and whether the plaintiff should be permitted to recover its costs and attorney's fees pursuant to § 52-484. We agree with the plaintiff that the stipulation did not conclusively resolve its liability on the funds and, therefore, the trial court could have afforded additional practical relief to the plaintiff.[8] Accordingly, we conclude that the dismissal of the plaintiff's interpleader action was improper.

Whether an action is moot implicates a court's subject matter jurisdiction and is therefore a question of law over which we exercise plenary review. *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 255, 990 A.2d 206 (2010). "A case is considered moot if [the trial] court cannot grant the appellant any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 541, 985 A.2d 1052 (2010).

Our analysis of the plaintiff's claim that the defendants' stipulation did not conclusively resolve whether the plaintiff was discharged of any liability to the defendants arising out of their conflicting claims to the funds turns in part on the unique character of actions in the nature of interpleader pursuant to § 52-484. Although interpleader originally derived from common law and equity, in 1983, the legislature adopted "a broad statutory bill in the nature of interpleader that did not incorporate the traditional equitable restriction[s] [on interpleader]. Except for the addition of a provision for costs and fees and for a few trivial language modifica-

---

[8] In light of this conclusion, we need not reach the plaintiff's alternate contention that the interpleader action is not moot on the basis of its claim for attorney's fees and costs.

tions, this statute remains as Connecticut's interpleader rule." 2 E. Stephenson, Connecticut Civil Procedure (3d Ed. 2002) § 225 (b). The current version of the interpleader statute provides in relevant part: "Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case . . . ." General Statutes § 52-484.

It is well established that the primary purpose of an interpleader action is to shield the stakeholder from conflicting claims to funds controlled by that stakeholder. See, e.g, *Nash* v. *Smith*, 6 Conn. 421, 424 (1827) ("[t]he object of the bill [of interpleader] is two-fold; first, to indemnify the plaintiff; and secondly, to prevent a multiplicity of suits"); 2 E. Stephenson, supra, § 225 (a) ("[i]nterpleader is a broad joinder device to facilitate consolidation of related claims so as to avoid multiple litigation as well as protection against multiple liability"); see also *Washington Electric Cooperative, Inc.* v. *Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) ("[r]ooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund"). Accordingly, interpleader actions are proper only when a stakeholder faces two or more adverse claims to the same property. See *Ackerman* v. *Union & New Haven Trust Co.*, 90 Conn. 63, 69, 96 A. 149 (1915) (interpleader involves "triangular dispute"); *Union Trust Co.* v. *Stamford Trust Co.*, 72 Conn. 86, 93, 43 A.

555 (1899) (interpleader proper when there is "single duty for which there has been a double demand").

Actions pursuant § 52-484 involve "two distinct parts, the first of which is an interlocutory judgment of interpleader. . . . An interlocutory judgment of interpleader, which determines whether interpleader lies, traditionally precedes adjudication of the claims." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 216 n.24, 994 A.2d 106 (2010); see also Practice Book § 23-44 ("No trial on the merits of an interpleader action shall be had until [1] an interlocutory judgment of interpleader shall have been entered; and [2] all defendants shall have filed statements of claim, been defaulted or filed waivers. Issues shall be closed on the claims as in other cases."); *Yankee Millwork Sash & Door Co.* v. *Bienkowski*, 43 Conn. App. 471, 473, 683 A.2d 743 (1996) ("The interlocutory judgment of interpleader determines the propriety of the interpleader procedure. . . . Until the interlocutory judgment of interpleader has been rendered, there can be no trial on the merits of the interpleader proceeding." [Citation omitted.]). In resolving whether an appeal can be taken from an interlocutory judgment of interpleader, this court has stated that such a judgment is "clearly separable and distinct from any other judgment which may be rendered. As between the plaintiff and the defendants it finally and irrevocably fixes the status and determines certain rights of each with respect to the main suit." *Kerite Co.* v. *Alpha Employment Agency, Inc.*, 166 Conn. 432, 438, 352 A.2d 288 (1974).

It is well established, however, that, even following an interlocutory judgment of interpleader, a trial court must take some action to absolve a disinterested stakeholder of responsibility.[9] Generally, this effect is accom-

---

[9] We note that stakeholders may commence interpleader actions even if they have an interest in the disputed fund. See *Millman* v. *Paige*, 55 Conn. App. 238, 242, 738 A.2d 737 (1999) ("The classic interpleader action existing in equity, prior to the enactment of the statute, was brought by a disinterested

plished by discharging the stakeholder from the suit. 2 E. Stephenson, supra, § 225 (g) (explaining that, once court makes interlocutory judgment of interpleader, it should "order the other parties to interplead, and if the stakeholder admits the debt and disclaims personal interest in the fund, he or she should be discharged and dropped from the suit at this point"); see also *Avco Corp.* v. *Peterson Engineering Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-535232 (November 16, 1994) (13 Conn. L. Rptr. 26, 29 n.6) ("the usual relief sought on a bill of interpleader includes interpleading, *discharge*, and payment of counsel fees and disbursements out of the fund in question" [emphasis in original; internal quotation marks omitted]); 44B Am. Jur. 2d, Interpleader § 20 (2007) ("[i]f the interpleader is considered proper, an interlocutory judgment of interpleader is made, dismissing the plaintiff from the proceeding, and the remaining parties litigate the claims in dispute among themselves").

Neither this court nor the Appellate Court yet has had the occasion to examine under what circumstances an interpleader action may become moot when the disinterested stakeholder is *not* discharged from the action. We therefore turn for guidance to courts of other jurisdictions that have examined this issue, generally, and the effect of a subsequent voluntary agreement in these proceedings on mootness, specifically. These cases reveal that a voluntary agreement renders moot an interpleader action only when that agreement fully and conclusively resolves the "triangular dispute"; *Ack-*

stakeholder to establish the undivided ownership of money or property claimed by two or more entities or individuals. . . . After the passage of the forerunner to § 52-484 in 1893, the rule that an interpleader action be maintained only by a stakeholder with no interest in the disposition of the fund was relaxed." [Citations omitted.]). The plaintiff in the present case, however, asserted no interest in the disputed funds, and therefore we limit our analysis to such disinterested stakeholders.

*erman* v. *Union & New Haven Trust Co.*, supra, 90 Conn. 69; among the stakeholder and the claimants. This resolution may occur when all the parties, including the stakeholder, are parties to a settlement agreement; see *Prince* v. *Underhill*, 670 So. 2d 92, 95 (Fla. App. 1996) (settlement stipulation among all parties removed all doubt as to obligation of stakeholder); or when one claimant expressly relinquishes all rights to the disputed funds in a *binding* pleading such that the plaintiff could not be subject to multiple liability. See *Union Springs Telephone Co.* v. *Renfroe*, 620 So. 2d 649, 650–51 (Ala. 1993) (trial court's dismissal of interpleader action as moot was proper when defendants filed joint motion to dismiss specifically stating that one defendant was entitled to use of property and that opposing defendant relinquished all rights relating to property and, accordingly, plaintiff was released from all further liability regarding use of disputed property). Moreover, even when an agreement among claimants obviates the need for the court to determine to whom the funds should be paid, courts have indicated that the trial court should retain jurisdiction to direct the distribution of the funds. See *Truck-A-Tune, Inc.* v. *Ré*, 23 F.3d 60, 62 (2d Cir. 1994) (trial court retains jurisdiction over interpleader action after claimants' settlement "to order disposition of the property in conformity with the claimants' agreement"); *New York Life Ins. Co.* v. *Connecticut Development Authority*, 700 F.2d 91, 95 (2d Cir. 1983) (court properly ordered disposition of disputed funds in interpleader action even though competing claimants had defaulted); *First Union National Bank* v. *FCVS Communications*, 328 S.C. 290, 292, 494 S.E.2d 429 (1997) (dismissing interpleader action as moot after granting motion to release funds pursuant to agreement among parties). In essence, these cases indicate that, in order to render an interpleader action moot, a voluntary agreement must

effectuate the purpose of interpleader—to shield the plaintiff from multiple liability—such that a judgment in the action can provide no practical relief to the stakeholder.

In the present case, the court did not discharge the plaintiff from the action following the interlocutory judgment of interpleader. We therefore must determine whether the stipulation, itself, effectuated the purpose of interpleader. Our review of the facts of this case indicates that the voluntary agreement did not do so because it did not conclusively shield the plaintiff as a disinterested stakeholder from the possibility of continuing double liability on the debt for several reasons. First, the plaintiff was not a party to the stipulation. Second, although the defendants agreed therein that YAH Realty "should be the recipient of said funds," the stipulation contained no express relinquishment of the rights of John Fitzpatrick and Rose Fitzpatrick to make a claim against the plaintiff with respect to the funds. Cf. *Union Springs Telephone Co.* v. *Renfroe*, supra, 620 So. 2d 650–51; *Prince* v. *Underhill*, supra, 670 So. 2d 95. In addition, the binding effect of the stipulation was uncertain because it was voluntary and was not signed or otherwise affirmed by any of the defendants. See *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 281, 933 A.2d 256 (2007) (voluntary cessation of activity when party is free to resume challenged activity does not render moot action for injunction). Indeed, the stipulation was inconsistent with the defendants' previously conflicting positions regarding the funds under the pleadings they had filed with the trial court. Moreover, the stipulation expressly requested that the trial court enter an order directing distribution of the funds, thereby recognizing that further judicial action was necessary to conclude the matter. Under these circumstances, in the absence of judicial intervention, the agreement was not conclusive

as to the *plaintiff's* obligations toward the defendants, and the trial court therefore could have afforded practical relief to the plaintiff by affirmatively discharging the plaintiff from liability or directing the disposition of the funds or both. Accordingly, the trial court improperly dismissed the plaintiff's interpleader action as moot.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.