******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TRIKONA ADVISERS LIMITED *v.* HAIDA
INVESTMENTS LIMITED ET AL.
(SC 19439)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa and Vertefeuille, Js.

*Argued April 21—officially released September 1, 2015*

*John G. Balestriere,* pro hac vice, with whom were

*Jillian L. McNeil*, pro hac vice, *Stefan Savic*, and, on the brief, *James T. Shearin*, for the appellants (defendants).

*Michael C. Gilleran*, pro hac vice, with whom, on the brief, was *Christopher L. Ayers*, for the appellees (named plaintiff et al.).

*Robert D. Laurie*, with whom, on the brief, was *Shrina B. Faldu*, for the appellee (plaintiff Vera Financial Corporation).

*Opinion*

EVELEIGH, J. This action arises out of a dispute over the control and ownership of 500 shares of stock (shares) in the named plaintiff, Trikona Advisers Limited (Trikona), an investment advisory corporation specializing in Indian real estate, which is incorporated in the Cayman Islands. The plaintiffs Asia Pacific Ventures Limited (Asia Pacific) and Vera Financial Corporation (Vera Financial) brought an interpleader action, pursuant to General Statutes § 52-484, to determine ownership of the shares.[1] The named defendant, Haida Investments Limited (Haida), appeals from the judgment of the trial court rendering an interlocutory judgment of interpleader.[2] On appeal, Asia Pacific claims that Haida lacks standing to appeal because Haida was not aggrieved by the trial court's interlocutory judgment of interpleader.[3] Haida contends that there are no competing claims to the shares warranting the trial court's interlocutory judgment of interpleader.[4] We conclude that Haida has established aggrievement and that the trial court properly rendered an interlocutory judgment of interpleader because Asia Pacific and Vera Financial alleged facts sufficient to establish that Haida has a claim to the shares and that there are facially competing claims to the shares. Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts and procedural history, which provide the necessary background for the resolution of this appeal. The present interpleader action stems from a dispute between two families over the ownership and control of Trikona.[5] In 2006, Aashish Kalra[6] and Rakshitt Chugh formed Trikona. Asia Pacific allegedly owns 50 percent of Trikona stock, representing Kalra's interest. Haida and ARC Capital, LLC (ARC Capital), collectively own the remaining 50 percent of Trikona stock, representing Chugh's interest. Kalra and Chugh initially were comanaging directors of Trikona, sharing equal operational control over the corporation, and they both served on Trikona's board of directors since its inception.[7] On February 24, 2012, Trikona filed a complaint alleging, inter alia, that Chugh, acting in his capacity as the agent of Haida, had breached his fiduciary duties owed to Trikona (underlying complaint). In the underlying complaint, Trikona sought the imposition of a constructive trust on the stock held by Haida and ARC Capital.[8]

Between 2010 and 2012, Vera Financial made a series of unsecured loans to Asia Pacific. In April, 2013, Vera Financial and Asia Pacific entered into an agreement, which consolidated the unsecured loans into one secured loan and granted Vera Financial a security interest, not to exceed $500,000, in all of the assets of Asia Pacific, including Asia Pacific's shares in Trikona. The agreement also included a special power of attorney, by which Asia Pacific granted Vera Financial the right

to acquire, sell, transfer, assign, and dispose of all or any part of the shares. Asia Pacific subsequently defaulted on its obligation under the agreement. Vera Financial alleges that, in July, 2013, Asia Pacific "executed a stock power transferring and/or assigning all of its ownership rights in the shares to Vera Financial."

In February, 2012, Haida and ARC Capital, as shareholders of Trikona, filed a petition to wind-up and dissolve Trikona in the Grand Court of the Cayman Islands and named Asia Pacific as the principal respondent in the action. Haida and ARC Capital also sought the immediate appointment of provisional liquidators, otherwise known in the United States as trustees. The Grand Court of the Cayman Islands granted this request in January, 2013, and awarded Haida and ARC Capital approximately $760,000 in attorney's fees against Asia Pacific. Haida and ARC Capital moved to attach the shares and the Grand Court of the Cayman Islands subsequently granted an ex parte provisional charging order against the shares in the amount of the judgment that had been previously awarded. In its appellate brief before this court, Haida represents that, once the charging order was made absolute, Haida and ARC Capital issued a summons for the sale of the shares by public auction.

On October 4, 2013, Asia Pacific filed a motion in the Superior Court seeking permission to tender the shares to that court or, in the alternative, the appointment of a temporary receiver to hold the shares. By a complaint dated October 23, 2013 (interpleader complaint), Asia Pacific and Vera Financial commenced the present interpleader action, seeking, among other relief, a final judicial determination as to the proper owner of the shares.[9] Haida and ARC Capital did not file an answer to the interpleader complaint denying the factual allegations contained therein.[10]

Following oral argument on the motion, the trial court rendered an interlocutory judgment of interpleader, ordering that the shares be deposited with the clerk of the court on the same day that the order was entered. In its brief, Haida represents that, following the trial court's judgment of interpleader, Haida and ARC Capital asked for an adjournment of the proceeding before the Grand Court of the Cayman Islands, which was granted, and that, therefore, the public auction never took place. Haida subsequently moved for reconsideration of the trial court's interlocutory judgment of interpleader. Following oral argument, the trial court denied that motion. Haida subsequently appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Pursuant to Practice Book §§ 60-2 (1) and 61-10 (b), this court ordered the trial court to articulate the factual basis for its judgment of interpleader. Specifically, this

court ordered clarification as to "whether [the trial court] found [that there were claims by] two or more [persons] to the [shares]." The trial court issued an articulation in which it stated that it had "concluded that all of the parties who participated in the interpleader hearing had, and apparently still have, claims to the [shares] which were and are strong enough to justify the standards of an *interlocutory* judgment of interpleader." (Emphasis in original.) The trial court further clarified that it cannot "make the necessary determinations as to any of the . . . parties, who are at this point in the case at least potentially entitled to some interest in the [shares], until the case is tried on the merits."

Before we address the claims on appeal, we begin by setting forth the general legal principles governing interpleader actions pursuant to § 52-484. "Although interpleader originally derived from common law and equity, in [1893], the legislature adopted 'a broad statutory bill in the nature of interpleader that did not incorporate the traditional equitable restriction[s] [on interpleader]. Except for the addition of a provision for costs and fees and for a few trivial language modifications, this statute remains as Connecticut's interpleader rule.'" *Vincent Metro, LLC* v. *YAH Realty, LLC*, 297 Conn. 489, 495–96, 1 A.3d 1026 (2010), quoting 2 E. Stephenson, Connecticut Civil Procedure (3d Ed. 2002) § 225 (b). Section 52-484 provides in relevant part: "Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case . . . ."

" '[I]nterpleader is a broad joinder device to facilitate consolidation of related claims so as to avoid multiple litigation as well as protection against multiple liability . . . .' " *Vincent Metro, LLC* v. *YAH Realty, LLC*, supra, 297 Conn. 496, quoting 2 E. Stephenson, supra, § 225 (a). "The classic interpleader action existing in equity, prior to the enactment of the statute, was brought by a disinterested stakeholder to establish the undivided ownership of money or property claimed by two or more entities or individuals. . . . After the passage of the forerunner to § 52-484 in 1893, the rule that an interpleader action be maintained only by a stakeholder with no interest in the disposition of the fund was relaxed." (Citations omitted.) *Millman* v. *Paige*, 55 Conn. App. 238, 242, 738 A.2d 737 (1999). "Section 52-484 does not preclude an action . . . in which all claimants, including an interested possessor, as defendants, seek all or a portion of the amount being held by one

of the defendants. The equitable purpose of the statute is to give all those interested or entitled to all or a portion of a fund held by another an opportunity to resolve all questions in a single action." Id., 243; see also *Vincent Metro, LLC* v. *YAH Realty, LLC*, supra, 497 n.9 (noting that "stakeholders may commence interpleader actions even if they have an interest in the disputed fund").

"Actions pursuant § 52-484 involve two distinct parts . . . ." (Internal quotation marks omitted.) *Vincent Metro, LLC* v. *YAH Realty, LLC*, supra, 297 Conn. 497; see also *Gold* v. *Rowland*, 296 Conn. 186, 216 n.24, 994 A.2d 106 (2010). In the first part, the court must determine whether the interpleader plaintiff has alleged facts sufficient to establish that "there are adverse claims to the fund or property" at issue. Practice Book § 23-43. If the court considers interpleader to be proper under the circumstances, then the court may render an interlocutory judgment of interpleader. See *Yankee Millwork Sash & Door Co.* v. *Bienkowski*, 43 Conn. App. 471, 473, 683 A.2d 743 (1996) ("[t]he interlocutory judgment of interpleader determines the propriety of the interpleader procedure"). Only once an interlocutory judgment of interpleader has been rendered may the court hold a trial on the merits, compelling the parties to litigate their respective claims to the disputed property. Practice Book § 23-44.[11]

I

As a preliminary matter, we first address the issue of whether Haida has standing to bring the present appeal. Asia Pacific contends that Haida lacks standing to appeal the trial court's interlocutory judgment of interpleader. Specifically, Asia Pacific asserts that, because Haida disclaims all rights to the shares, Haida was not aggrieved by the trial court's interlocutory judgment of interpleader and, therefore, Haida does not have sufficient interest in the matter to pursue this appeal. Haida contends that it has standing to bring this appeal because it was named as a defendant to the interpleader action. We agree with Haida.

"A threshold inquiry of this court upon every appeal presented to it is the question of appellate jurisdiction." (Internal quotation marks omitted.) *King* v. *Sultar*, 253 Conn. 429, 434, 754 A.2d 782 (2000). "The right to appeal is purely statutory, and only an aggrieved party may appeal." (Internal quotation marks omitted.) *Perry* v. *Perry*, 312 Conn. 600, 610, 95 A.3d 500 (2014); see also Practice Book § 61-1. General Statutes § 52-263, which governs the subject matter jurisdiction of this court, provides in relevant part that "if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ."[12] "A determination regarding . . . subject matter jurisdic-

tion is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Niro* v. *Niro*, 314 Conn. 62, 67, 100 A.3d 801 (2014).

"It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features." (Internal quotation marks omitted.) *Perry* v. *Perry*, supra, 312 Conn. 620. "Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) Id. "Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 92, 971 A.2d 1 (2009). "Aggrievement is established if there is a *possibility*, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Emphasis added; internal quotation marks omitted.) *Smith* v. *Snyder*, 267 Conn. 456, 461, 839 A.2d 589 (2004).

In the present case, Haida does not claim statutory aggrievement; therefore, we consider whether Haida has been classically aggrieved by the trial court's interlocutory judgment of interpleader. Asia Pacific claims that, by contending on appeal that it does not presently have any claim to the shares, Haida has failed to satisfy the test for classical aggrievement because it has no specific personal and legal interest that has been adversely affected.

For purposes of resolving the issue of whether Haida has been aggrieved by the trial court's interlocutory judgment of interpleader, it is not necessary that this court determine the exact nature of Haida's interest in the subject matter. Haida need only have a "personal and legal interest in the subject matter . . . ." (Internal quotation marks omitted.) *Perry* v. *Perry*, supra, 312 Conn. 620. Asia Pacific and Vera Financial allege that Haida and ARC Capital are seeking to use the final charging order from the Grand Court of the Cayman Islands to gain full control and ownership over the shares, thereby obtaining full control and ownership of Trikona and gaining the authority to withdraw the underlying complaint. Although, in its appellate brief, Haida disclaims "any possessory interest" in the shares and asserts that "no lien exists," Haida does not dispute

that the shares are subject to a charging order in the amount of a judgment previously awarded to Haida and ARC Capital in a proceeding held before the Grand Court of the Cayman Islands or that the shares may be sold at a public auction in the Cayman Islands in satisfaction of the judgment rendered by that court against Asia Pacific.[13] These undisputed facts demonstrate that Haida has an interest in the disposition of the shares at the second stage of the interpleader action because of its interest in having the shares sold at a public auction to satisfy its judgment against Asia Pacific. We conclude, therefore, that as a secured creditor of Asia Pacific by means of the charging order granted by the Grand Court of the Cayman Islands, Haida has a sufficient personal and legal interest in the subject matter of this action to be aggrieved. See *Perry* v. *Perry*, supra, 620.

Moreover, it is sufficient that Asia Pacific and Vera Financial's allegations establish that there is a "possibility" that some legally recognizable interest of Haida's " 'has been adversely affected' " by the interlocutory judgment of interpleader. *Smith* v. *Snyder*, supra, 267 Conn. 461. Because the trial court's interlocutory judgment of interpleader has effectively deprived any party of the use of the shares and the ability to exercise any rights over the shares until there is a judicial determination as to each party's rights to the shares, the present case satisfies the standard for classical aggrievement.

We conclude, therefore, that Haida has standing to bring this appeal because the allegations in Asia Pacific and Vera Financial's interpleader complaint, if true, demonstrate that there is a possibility that Haida's alleged security interest in the shares will be adversely affected.

## II

Having concluded that we have appellate jurisdiction, we next consider the merits of Haida's claim on appeal. On appeal, Haida claims that the only entity with an interest in the shares legally recognized under the law of the Cayman Islands is Asia Pacific and that, as a result, the statutory requirement that the property at issue in an interpleader action be "claimed by two or more persons" has not been satisfied. General Statutes § 52-484. Asia Pacific and Vera Financial respond that there are competing claims to the shares. Specifically, Asia Pacific claims that Asia Pacific, Haida, and ARC Capital have uncontested claims to the shares and that Vera Financial has a "contested claim" to the shares. Vera Financial asserts that it has a claim to the shares because Asia Pacific validly transferred ownership of the shares to Vera Financial as the winding-up proceeding held in the Grand Court of the Cayman Islands was not formally recognized under chapter 15 of the United States Bankruptcy Code. See 11 U.S.C. § 1501 et seq. Vera Financial further claims that Haida and ARC Capi-

tal have an ex parte lien over the shares. We conclude that Asia Pacific and Vera Financial have alleged facts sufficient to establish the existence of competing claims to the shares.

Neither this court nor the Appellate Court has established the standard of review for a claim challenging the trial court's interlocutory judgment of interpleader pursuant to § 52-484.[14] Therefore, in determining the appropriate standard of review, we turn to a procedurally similar action—a motion to intervene as a matter of right. See, e.g., *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 456–57, 904 A.2d 137 (2006). "For purposes of judging the satisfaction of [the] conditions [for intervention] we look to the pleadings, that is, to the motion for leave to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true. *The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. . . . Thus, neither testimony nor other evidence is required to justify intervention, and [a] proposed intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene*. The inquiry is whether the claims contained in the motion, if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 457. Similarly, the question presented at the first stage of an interpleader action is whether there are "conflicting claims to property in the hands of a stakeholder" so as to make interpleader appropriate. *Commercial Discount Co.* v. *Plainfield*, 120 Conn. 274, 278–79, 180 A. 311 (1935), citing *Grand Lodge* v. *Burns*, 84 Conn. 356, 363, 80 A. 157 (1911). "A complaint in an interpleader action should allege only such facts as show that there are adverse claims to the fund or property and *need not, in fact, should not, allege the basis upon which any claimant relies to justify his claim*; the latter allegations are to be made in the statement of claim following the interlocutory judgment of interpleader." (Emphasis added; internal quotation marks omitted.) *Yankee Millwork Sash & Door Co.* v. *Bienkowski*, supra, 43 Conn. App. 473, citing Practice Book (1978–97) § 538 (now § 23-43).

This court has held that "the less restrictive de novo standard of review is more consistent with the nature of the relevant inquiry taken to evaluate [whether a movant seeking to intervene as a matter of right has demonstrated a sufficient interest in the subject matter of the litigation], which is confined to a review of the relevant pleadings, with all allegations therein taken as true" than the abuse of discretion standard of review. *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 455. In light of the similarities to granting a

motion to intervene as a matter of right, we conclude that the appropriate standard of review for an interlocutory judgment of interpleader is de novo.[15]

Section 52-484 is "remedial . . . and to be favorably construed. It requires the court to which any complaint founded upon it may be brought, to 'hear and dispose of all questions which may arise in such case,' and by the provision for making not only all who claim to be 'entitled to,' but all who claim to be '*interested in*,' the property in question, parties defendant, shows that its purpose is to secure a determination of every right, title or interest that can *by possibility* be set up."[16] (Emphasis added.) *Union Trust Co.* v. *Stamford Trust Co.*, 72 Conn. 86, 93, 43 A. 555 (1899); see also *United States* v. *Federative Republic of Brazil*, 748 F.3d 86, 95 (2d Cir. 2014) ("[a]n interpleader suit, by its very nature, identifies various *possible* claimants to the funds at issue, but leaves it to the court to decide which, if any, have a valid claim" [emphasis in original]); 44B Am. Jur. 2d 609, Interpleader § 3 (2007) ("Interpleader statutes are to be liberally construed. Every reasonable doubt should be resolved in favor of a putative stakeholder's right to interplead." [Footnote omitted.]). "It is the express purpose of interpleader actions to avoid duplicative litigation by resolving all possible questions of liability between all possible parties in one proceeding. As such, interpleader actions are especially designed to advance the interests of wise judicial administration and should be furthered whenever possible." *Zellen* v. *Second New Haven Bank*, 454 F. Supp. 1359, 1365 (D. Conn. 1978); see also *John Hancock Mutual Life Ins. Co.* v. *Advance Realty Co.*, 9 Conn. Supp. 367, 368 (1941) ("[t]he instances will be extremely rare where an interlocutory judgment will be denied when the plaintiff alleges the possession of funds to which two or more claim to be entitled").

In the present case, although Vera Financial alleges that it is the "legal and/or equitable owner" of the shares, Asia Pacific asserts that it continues to own the shares.[17] Furthermore, Asia Pacific and Vera Financial allege that the Grand Court of the Cayman Islands awarded Haida and ARC Capital a judgment against Asia Pacific at the winding-up proceeding and subsequently granted an ex parte provisional charging order against the shares in the amount of the judgment. Asia Pacific alleges that the Grand Court of the Cayman Islands disregarded the fact that Asia Pacific had existing creditors, including a secured creditor, namely, Vera Financial, when it made the charging order absolute. Haida and ARC Capital did not deny Asia Pacific and Vera Financial's allegations regarding the alleged charging order at oral argument before the trial court. Having reviewed the facts set forth in the interpleader complaint, we conclude that Asia Pacific and Vera Financial's allegations are legally sufficient to support the trial court's interlocutory judgment of interpleader.

Haida dedicates most of its appellate briefs to contesting the merits of each party's purported claim to the Trikona shares, and its briefs are devoid of any claim that Asia Pacific and Vera Financial have failed to satisfy the pleading standard set forth in Practice Book § 23-43.[18] The crux of Haida's claim on appeal is that, pursuant to Cayman Islands law, Asia Pacific is the only possible legal owner of the shares and that, therefore, there are no competing claims to the shares that would warrant the trial court's interlocutory judgment of interpleader, as required under § 52-484. First, Haida alleges that Cayman Islands law precludes any transfer of shares in a company after the commencement of a winding-up proceeding. Thus, Haida claims that Vera Financial can have no claim to the shares under Cayman Islands law because the alleged stock power between Asia Pacific and Vera Financial occurred after the winding-up proceeding held in the Grand Court of the Cayman Islands had commenced. Second, Haida similarly claims that Cayman Islands law precludes Haida's acquisition of the shares without an order from the Grand Court of the Cayman Islands. Haida argues that, as a result of the charging order against the shares issued by the Grand Court of the Cayman Islands, Haida and ARC Capital issued a summons for the sale of the shares at a public auction. Haida claims that because any individual or entity, including Asia Pacific and Vera Financial, would have an opportunity to bid on the shares at the public auction and no such auction has yet taken place, Haida does not have a "possessory interest" in the Trikona shares.

To the extent that Haida asserts that this court should consider the merits of the claims alleged in the interpleader complaint to determine their viability under Cayman Islands law, we decline to entertain such an assertion.[19] It was not the role of the trial court, nor is it the function of this court on appeal, to consider the merits of the purportedly competing claims at this preliminary stage of the present interpleader action. See *Vincent Metro, LLC* v. *YAH Realty, LLC*, supra, 297 Conn. 497. Applying the interpleader standard set forth previously in this opinion, and considering the liberal construction of § 52-484, we accept the allegations in the interpleader complaint as true and conclude that Asia Pacific and Vera Financial have alleged facts sufficient to establish that Asia Pacific, Vera Financial, Haida, and ARC Capital all have facially competing claims to the shares. See 44B Am. Jur. 2d, supra, § 3, p. 609 ("[i]nterpleader statutes are to be liberally construed"). As the Appellate Court has previously explained, Asia Pacific and Vera Financial have no duty to "allege the basis upon which any claimant relies to justify his claim" before the trial court's interlocutory judgment of interpleader, as the parties will have an opportunity to present such allegations at the second procedural stage of this action in which the merits of

their claims are adjudicated. *Yankee Millwork Sash & Door Co.* v. *Bienkowski*, supra, 43 Conn. App. 473.

We further rely upon the trial court's articulation in which it stated that interpleader was proper under the circumstances because all parties to the interpleader action are "at least potentially entitled to some interest in the stock . . . ."[20] Moreover, insofar as Haida claims that the charging order granted by the Grand Court of the Cayman Islands against the shares does not qualify as a sufficient interest in the Trikona shares for purposes of maintaining an interpleader action, we disagree. As this court explained in *Union Trust Co.*, § 52-484 is broad enough to encompass any "interest that can *by possibility* be set up." (Emphasis added.) *Union Trust Co.* v. *Stamford Trust Co.*, supra, 72 Conn. 93.

In consideration of the fact that these parties have been involved in multiple proceedings in several jurisdictions; see footnote 5 of this opinion; and that the underlying dispute between the parties is likely to continue until the ownership of the shares and, thus, the ultimate control of Trikona, are determined, it is in the interest of wise judicial administration to resolve all questions concerning the shares in a single proceeding with all interested parties present. See *Zellen* v. *Second New Haven Bank*, supra, 454 F. Supp. 1365 (noting that "interpleader actions are especially designed to advance the interests of wise judicial administration").

We conclude that Asia Pacific and Vera Financial have sufficiently stated a cause of action for interpleader, satisfying the pleading requirements as set forth in Practice Book § 23-43. Accordingly, we affirm the trial court's interlocutory judgment of interpleader.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] We note that, although Trikona filed the original complaint in the underlying action, it was not named as a party in the interpleader complaint by Asia Pacific and Vera Financial. For the sake of simplicity, we refer to all of the plaintiffs by name.

[2] The other defendants in the present case are Rakshitt Chugh and ARC Capital, LLC. Although Chugh was named as a defendant in the original complaint filed by Trikona, he was not named a party in the interpleader complaint filed by Asia Pacific and Vera Financial. ARC Capital, LLC, was named as a defendant in the interpleader action, but is not a party to the present appeal. For the sake of simplicity, we refer to all of the defendants by name.

[3] We note that Trikona has filed a joint appellate brief with Asia Pacific and that Rakshitt Chugh has filed a joint appellate brief with Haida. Because neither Trikona nor Chugh were named as parties to the interpleader action filed by Asia Pacific and Vera Financial, we ascribe the various assertions contained within these joint briefs to Asia Pacific and Haida, respectively.

[4] Insofar as Haida claims that the trial court's interlocutory judgment of interpleader interferes with a proceeding involving the shares in the Cayman Islands in violation of principles of international comity, the argument is premised on conclusory statements. Although Haida cites to one case for the general principle of international comity, Haida does not undertake any analysis or application of the law to the facts in this case. Furthermore, to the extent that Asia Pacific claims that the failure of ARC Capital, LLC, to appeal from the trial court's judgment of interpleader deprives this court of the authority to reverse the trial court's judgment, the argument is made

in a mere three sentences of its appellate brief and is unaccompanied by any supporting analysis or citation to relevant legal authority. We consider these claims inadequately briefed and, therefore, decline to address them. See *Electrical Contractors*, *Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012) ("Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of 'conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . .' " [Citations omitted.]).

[5] These parties have filed several actions in multiple domestic and international courts. For example, other than the present action, the parties have filed actions in the United States District Court for the District of Connecticut, the New York Supreme Court, the Grand Court of the Cayman Islands, India, and Mauritius. Although the number of proceedings and the variety of venues may provide context as to the ongoing nature and extent of the dispute between the parties, only the proceeding before the Grand Court of the Cayman Islands is relevant to the present appeal. We discuss that proceeding in more detail subsequently in this opinion.

[6] Although Kalra is not a party to either the underlying action or the interpleader action in an individual capacity, we note that he signed the verified complaint in the underlying action on behalf of Trikona and filed an affidavit in support of the subsequent interpleader complaint.

[7] In January, 2012, the board of directors of Trikona expelled Chugh.

[8] Trikona also named Haida, in its corporate capacity and in its capacity as the alleged alter ego of Chugh, as a defendant.

[9] In the interpleader complaint, Asia Pacific and Vera Financial combine requests for permissive intervention and a judgment of interpleader. Count one of the complaint requests interpleader relief. We note that Asia Pacific and Vera Financial filed a revised complaint dated November 27, 2013, containing identical allegations, but in which they solely request interpleader relief. Neither Haida nor Chugh challenge the procedural nature in which this interpleader action was instituted. Therefore, we do not address that issue.

[10] We note that Haida filed a memorandum of law in opposition to Asia Pacific's motion to intervene, but it made no objection to the interpleader relief sought. Furthermore, we note that even if we were to take the "[s]tatement of [f]acts" set forth in Haida's memorandum of law in opposition to Asia Pacific's motion to intervene as a pleading, there are no facts in the memorandum that contradict the allegations of the interpleader complaint in a manner that would affect the outcome of the present appeal.

[11] Practice Book § 23-44 provides: "No trial on the merits of an interpleader action shall be had until (1) an interlocutory judgment of interpleader shall have been entered; and (2) all defendants shall have filed statements of claim, been defaulted or filed waivers. Issues shall be closed on the claims as in other cases."

[12] In the present case, it is undisputed that the trial court's interlocutory judgment of interpleader constitutes an appealable final judgment. See *Vincent Metro*, *LLC* v. *YAH Realty*, *LLC*, supra, 297 Conn. 497.

[13] We note that, although at the trial court's hearing on the motion for reconsideration, Haida asserted that there are not "sharply divergent claims about the [shares]," it never denied the existence of the charging order over the shares. Instead, counsel for Haida stated: "I mean we're not saying that the stock belongs to ARC [Capital] and Haida or . . . Chugh or any of these other entities on our side. . . . What we're saying is that under the . . . proceedings [before the Grand Court of the Cayman Islands], that [the] shares could soon be put up for public auction, and that this court should not interfere with that."

[14] Although all parties have asserted in their respective appellate briefs that the applicable standard of review for this interpleader action is abuse of discretion, no party has cited to relevant legal authority for this proposition. Haida cites to *First National Bank of Chicago* v. *Maynard*, 75 Conn. App. 355, 815 A.2d 1244 (foreclosure action), cert. denied, 263 Conn. 914, 821 A.2d 768 (2003), and *Reynolds* v. *Giuliani*, 506 F.3d 183, 198 (2d Cir. 2007) (discussing applicability of abuse of discretion standard to court's granting of injunctive relief). Both Asia Pacific and Vera Financial incorrectly rely on *Driscoll* v. *Norwich Savings Society*, 139 Conn. 346, 93 A.2d 925 (1952), for the proposition that an appellate court reviews a trial court's interlocutory judgment of interpleader for an abuse of discretion. Although *Driscoll* involved an interpleader action, this court did not apply the abuse of discretion standard of review to a trial court's interlocutory judgment of interpleader in that case, but rather, this court applied the abuse of discretion

standard to the trial court's award of counsel fees to the parties' respective personal representatives. Id., 351–52.

[15] We further note that Florida's First District Court of Appeal has held that the de novo standard of review applies to a "trial court's decision to grant interpleader . . . ." *Zimmerman* v. *Cade Enterprises, Inc.*, 34 So. 3d 199, 201 (Fla. App. 2010).

[16] As noted previously in this opinion, "[e]xcept for the addition of a provision for costs and fees and for a few trivial language modifications . . . [the interpleader statute of 1893] remains as Connecticut's interpleader rule." (Internal quotation marks omitted.) *Vincent Metro, LLC* v. *YAH Realty, LLC*, supra, 297 Conn. 495–96.

[17] We note that Vera Financial asserts in its appellate brief that it acquired rightful, exclusive ownership of the shares, and that Asia Pacific claims in its appellate brief that Vera Financial has a "contested claim" to the shares.

[18] We note that no party to this action cites to Practice Book § 23-43 in its appellate briefs. Although Haida cites to Practice Book § 23-44 in its brief, it fails to cite to Practice Book § 23-43 in either its initial or reply brief.

[19] Similarly, we decline to address Vera Financial's claim concerning the application of chapter 15 of the Bankruptcy Code and any claims relating to the amount of due process afforded in the Cayman Islands proceedings, as these claims speak to the merits of the purported claims and relate to Haida's inadequately briefed international comity claim. See footnote 4 of this opinion.

[20] We further note that, at the hearing dated December 12, 2015, the following statement was made by the trial court: "I have made nothing resembling a decision as to who's right and who's wrong because . . . we haven't gotten to those issues in the case."